**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| **NORMAN JENKINS,** | : | **Case No.: 21-cv-3722** |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| **CITY OF NEW YORK,** | : |  |
| **BRANDON GEMBECKI,** | : |  |
| **JORGE MONGE,** | : |  |
| **JOHN DOE NUMBERS 1-10, and** | : |  |
| **JANE DOE NUMBERS 1-10,** | : |  |
|  |  |  |
| Defendants. |  |  |

**COMPLAINT**

Plaintiff Norman Jenkins complains against Defendants City of New York, Brandon Gembecki, Jorge Monge, John Doe Numbers 1-10, and Jane Doe Numbers 1-10 as follows:

**INTRODUCTION**

1.      This is a federal civil rights action under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States and Title 42 of the United States Code, Section 1983, with state law claims brought under the New York Constitution and New York law. Mr. Jenkins brings this action to obtain compensatory and special damages, punitive damages, attorneys' fees, costs, and equitable relief for the false arrest, unlawful search, excessive force, unlawful detention, false imprisonment, and malicious prosecution by the individual Defendant New York Police Department officers. The conduct of the individual

Defendants, as well as the constitutional violations and torts suffered by Mr. Jenkins, occurred as a direct result of the unconstitutional policies of the City of New York.

**JURISDICTION AND VENUE**

**Jurisdiction**

2.      The Court has jurisdiction over the federal claims pursuant to Title 28 of the United States Code, Sections 1331 and 1343(a). The Court also has supplemental jurisdiction over the state law claims pursuant to Title 28 of the United States Code, Section 1367.

**Venue**

3.       The Southern District of New York is the proper federal venue for this action, pursuant to Title 28 of the United States Code, Section 1391(b), because it is the judicial district where the constitutional rights violations of Mr. Jenkins were committed.

**PARTIES**

4.      Plaintiff Norman Jenkins, at all times material hereto, was/is an adult residing in the City of New York, State of New York.

5.      Defendant City of New York ("Defendant City"), at all times material hereto, was/is a municipal corporation, organized and existing under the laws of the State of New York.

6.      Defendant City is authorized under the laws of the State of New York to operate and maintain the New York Police Department ("NYPD").

7.      The NYPD is the agent of Defendant City charged with law enforcement.

8.      Defendant Brandon Gembecki ("Defendant Gembecki"), at all times material hereto, was/is an adult residing in and employed by Defendant City as a police officer for the NYPD.

2

9.     At all times material hereto, Defendant Gembecki was acting under color of law, carrying out his official duties as an NYPD officer, and acting within the scope of his employment and his master-servant relationship with Defendant City.

10.     Defendant Jorge Monge ("Defendant Monge"), at all times material hereto, was/is an adult residing in and employed by Defendant City as a police officer for the NYPD.

11.     At all times material hereto, Defendant Monge was acting under color of law, carrying out his official duties as an NYPD officer, and acting within the scope of his employment and his master-servant relationship with Defendant City.

12.     Defendants John Doe Numbers 1-10, at all times material hereto, were/are unknown defendants employed by Defendant City as police officers for the NYPD.

13.     At all times material hereto, John Doe Numbers 1-10 were acting under color of law, carrying out their official duties as NYPD officers, and acting within the scope of their employment and their master-servant relationship with Defendant City.

14.     Defendants Jane Doe Numbers 1-10, at all times material hereto, were/are unknown defendants employed by Defendant City as police officers for the NYPD.

15.     At all times material hereto, Jane Doe Numbers 1-10 were acting under color of law, carrying out their official duties as NYPD officers, and acting within the scope of their employment and their master-servant relationship with Defendant City.

## NOTICE OF TORT CLAIMS TO DEFENDANT CITY

16.     New York state law requires tort victims to comply with certain notice provisions prior to commencing a lawsuit asserting tort claims against Defendant City.

17.     Mr. Jenkins complied with the notice provisions, as set forth in the subsequent paragraphs.

3

18.     Mr. Jenkins served the required Notice of Claim on the Comptroller of

Defendant City within ninety days of the January 29, 2020 incident upon which the Complaint

is based.

19.     At least 30 days have elapsed since the service of the Notice of Claim, and

adjustment or payment thereof has been neglected or refused.

20.     Defendant City demanded a hearing on Mr. Jenkins's claims, which was held on

June 23, 2020.

21.     This action was commenced within one year and ninety days of the January 29,

2020 incident upon which the Complaint is based.

## FACTS

### Defendant City's Unconstitutional Policies

22.     There is a pattern and practice going back more than 20 years of NYPD officers

falsifying arrest records and falsely testifying in criminal matters.

23.     Defendant City has had notice of the pattern and practice of NYPD officers

falsifying arrest records and falsely testifying in criminal matters since at least 1996.

24.     Defendant City has failed to adequately discipline NYPD officers who falsify

arrest records and/or who falsely testify in criminal matters.

25.     On October 1, 2015, the Office of Inspector General for the NYPD ("OIG")

issued a report finding that the NYPD failed to train offices on de-escalation tactics which

prevent excessive force and failed to discipline officers for excessive force.

26.     A copy of the OIG report is attached to this Complaint as Exhibit A, and is

incorporated as part of this Complaint.

27.     The OIG found that NYPD Commissioner failed impose discipline in 36% of

excessive force incidents.

4

28.     The OIG found that the NYPD had no centralized form for reporting officer use of force.

29.     The OIG found that the NYPD lacked any system for tracking officer use of force to monitor the problem of excessive force.

30.     The OIG found that the NYPD provides inadequate training on de-escalation techniques which prevent the use of excessive force.

31.     The OIG acknowledged that adequate reporting and documentation of NYPD officer use of force are required to ensure accountability for officers who use excessive force.

32.     The OIG acknowledged that de-escalation tactics prevent the use of excessive force by police officers.

33.     The OIG found that the NYPD's policies and training are inadequate with respect to de-escalation tactics.

34.     The OIG found that NYPS officers rarely used de-escalation tactics.

35.     On January 14, 2021, the Attorney General of the State of New York on behalf of the People of the State of New York ("the Attorney General") commenced an action against Defendant City and certain officials stating that there has been a pattern and practice for at least 20 years of NYPD officers using excessive force and conducting false arrests against persons exercising their First Amendment rights.

36.     A copy of the Complaint in *People of the State of New York v. City of New York, et al.*, United States District Court for the Southern District of New York Civil Action No.: 21-cv-322 is attached to this Complaint as Exhibit B, and is incorporated as part of this Complaint.

37.     The Attorney General stated that Defendant City knew about the pattern and practice of excessive force and false arrest prior to 2020, but failed to adequately train NYPD officers to prevent future misconduct.

5

38.     The Civilian Complaint Review Board ("CCRB"), an independent agency which conducts oversight of the NYPD, substantiated 471 allegations of excessive force between 2013 and 2019 against NYPD officers who were still employed as of June 2020.

39.     The CCRB substantiated 730 allegations of excessive force between 2003 and 2019 against NYPD officers who were still employed as of June 2020.

40.     The Attorney General stated that, despite Defendant City being on notice of the training deficiencies with respect to use of force set forth the OIG report attached as Exhibit A, Defendant City has failed to provide adequate training as evidenced by the continued officer misconduct.

41.     The Attorney General stated that Defendant City had notice that NYPD officer training and supervision was inadequate and likely to result in constitutional violations.

42.     The Attorney General stated that Defendant City acted with deliberate indifference to the Fourth and Fourteenth Amendment rights of Defendant City's residents.

43.     The Attorney General stated that there is a real and immediate threat that NYPD officers will continue to use excessive force.

44.     There is a Blue Wall of Silence within the NYPD where officers do not report the misconduct of others due to fear of retaliation.

45.     Defendant City's policies and customs, set forth in the preceding paragraphs, were in effect on January 29, 2020 and continue to the present.

46.     NYPD officers arresting individuals are recurring situations that present an obvious potential for constitutional violations, including false arrest and imprisonment, unreasonable search, use of excessive force, and malicious prosecution.

47.     NYPD officers using force against individuals are recurring situations that present an obvious potential for constitutional violations, including the use of excessive force.

48.     Prior to January 29, 2020 and continuing to the present, it was/is the policy of Defendant City to have a training program that was/is not adequate to train NYPD officers on de-escalation tactics so that the use of force is unnecessary and to prevent excessive force.

49.     Prior to January 29, 2020, Defendant City did not provide the individual Defendant NYPD officers with adequate training on de-escalation tactics so that the use of force is unnecessary and to prevent excessive force.

50.     As will be set forth below, the individual Defendants falsely arrested, used excessive force without de-escalation, unreasonably searched, and maliciously prosecuted Mr. Jenkins.

51.     The policies of Defendant City with respect to its failure to train NYPD officers, as set forth in the preceding paragraphs, were the moving force behind the constitutional violations suffered by Mr. Jenkins.

52.     Had Defendant City provided adequate training to NYPD officers, including the individual Defendant NYPD officers, the constitutional violation suffered by Mr. Jenkins would not have occurred.

53.     Prior to January 29, 2020 and continuing to the present, it was/is the policy of Defendant City to have a supervision program that was/is not adequate to:  (a) document NYPD officers' uses of force and (b) track and detect NYPD officers who are likely to use excessive force.

54.     The policies of Defendant City with respect to its failure to supervise NYPD officers, as set forth in the preceding paragraphs, were the moving force behind the constitutional violations suffered by Mr. Jenkins.

55.     Had Defendant City provided adequate supervision to NYPD officers, including the individual Defendant NYPD officers, the constitutional violations suffered by Mr. Jenkins would not have occurred.

56.     Prior to January 20, 2020 and continuing to the present, it was/is the policy of Defendant City to have a disciplinary program that was/is not adequate to discipline NPD officers for committing constitutional rights violations, including false arrest, excessive force, unreasonable search, and malicious prosecution.

57.     The policies of Defendant City with respect to its failure to discipline NYPD officers, as set forth in the preceding paragraphs, were the moving force behind the constitutional violations suffered by Mr. Jenkins.

58.     Had Defendant City provided adequate discipline to NYPD officers, including the individual Defendant NYPD officers, the constitutional violation suffered by Mr. Jenkins would not have occurred.

59.     Defendant City's policies of failing to adequately train, supervise, and discipline NYPD officers led the officers, including the individual Defendant NYPD officers, to believe that their actions would never be scrutinized and therefore directly encouraged constitutional violations such as the ones suffered by Mr. Jenkins.

60.     Defendant City's policies of failing to adequately train, supervise, and discipline NYPD officers caused the individual Defendants to violate Mr. Jenkins's constitutional rights because they believed there would be no consequences for their actions.

61.     The Mayor, Police Commissioner, and/or the NYPD Chief are Defendant City's policymakers for the hiring, training, supervision, and discipline of NYPD officers.

62.     Defendant City's policymakers knew/know that NYPD officers will confront the situation of a person protesting their actions.

8

63.     The situation of a person protesting NYPD officer actions presents the officers with a difficult choice that adequate training, supervision, and discipline will make less difficult.

64.     There is a history of NYPD officers mishandling situations where persons are protesting the officers' actions.

65.     The wrong choice by an NYPD officer when a person is protesting their actions frequently causes the deprivation of a person's constitutional rights, including but not limited to false arrest, unlawful detention, false imprisonment, unreasonable search, excessive force, and malicious prosecution.

66.     Prior to January 29, 2020 and continuing to the present, Defendant City's policymakers had/have actual and/or constructive notice that the policies of failing to adequately train, supervise, and discipline NYPD officers caused constitutional violations  but the policymakers have failed to remedy the policies.

67.     Prior to January 29, 2020 and continuing to the present, as set forth in the preceding paragraphs, Defendant City had/has a policy and custom of NYPD officers making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecutions.

68.     Prior to January 29, 2020 and continuing to the present, Defendant City's policymakers had/have actual and/or constructive notice of and approved/approve the policy and custom of NYPD officers making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecutions, and disregarded/disregard the constitutional violations caused by the policy and custom.

69.     The constitutional violations by the individual Defendant NYPD officers against Mr. Jenkins were undertaken pursuant to Defendant City's policy and custom of NYPD officers

making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecutions.

70.     The individual Defendants violated Mr. Jenkins's constitutional rights because of Defendant City's policy and custom of NYPD officers making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecutions.

71.     Had Defendant City not had a policy and custom of NYPD officers making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecutions, the constitutional violations suffered by Mr. Jenkins would not have occurred.

### The Constitutional Violations Suffered by Mr. Jenkins

72.     On the afternoon of January 29, 2020, Mr. Jenkins walked to visit the office of State Assemblyman Harry Rodriguez on 122nd Street, Harlem, New York, to see if there were any construction side-work opportunities available.

73.     The Assemblyman's office was located on 122nd Street, between 1st and Pleasant Avenue.

74.     Mr. Jenkins started his walk from 129th Street and walked down from 125th to 122nd Street on Lexington Avenue.

75.     While walking Mr. Jenkins was accosted by a plainclothes NYPD officer, who was later identified as Defendant Gembecki.

76.     Defendant Gembecki walked up to Mr. Jenkins from between two parked cars and grabbed Mr. Jenkins by the wrist.

77.     Defendant Gembecki did not have a NYPD police badge exposed.

78.     Mr. Jenkins protested by questioning Defendant Gembecki as to why he was being touched.

10

79.     Defendant Gembecki then stated that he was putting Mr. Jenkins under arrest.

80.     While still holding Mr. Jenkins by the wrist, and by then his jacket sleeve as well, Defendant Gembecki turned to the side and flashed a gun at Mr. Jenkins.

81.     Mr. Jenkins protested by informing Defendant Gembecki that he had the wrong guy.

82.     Mr. Jenkins then attempted to get his identification out, but his wallet fell to the ground.

83.     While still being held by Defendant Gembecki, Mr. Jenkins picked up his wallet, showed Defendant Gembecki his OSHA card and placed his wallet back in his pocket.

84.     Defendant Gembecki then called another police officer over by yelling, "Help me, help me!"

85.     Mr. Jenkins protested by asking Defendant Gembecki why he was calling the other officer, who was later identified as Defendant Monge.

86.     Defendant Gembecki then dragged Mr. Jenkins forward.

87.     Mr. Jenkins then fell on his knees and hit his head, sustaining injury to both.

88.     Defendant Gembecki then began to punch Mr. Jenkins in the back.

89.     A Jane Doe NYPD officer then came over and stepped on Mr. Jenkins's fingers, injuring them.

90.     Mr. Jenkins protested by yelling out in pain and asking why the NYPD officers were doing this to him.

91.     Defendant Monge came out of nowhere and handcuffed Mr. Jenkins's left wrist, jerking that wrist back and injuring Mr. Jenkins's shoulder, elbow, and wrist.

92.     While Defendant Gembecki was sitting on top of him, Mr. Jenkins attempted to pull out his right hand – which was pinned under his body by the weight of Defendant Gembecki – so it could be handcuffed.

93.     Mr. Jenkins was able to get his hand from under his body and give it to Defendant Gembecki, whereupon he was handcuffed.

94.     Mr. Jenkins was lifted off the ground.

95.     Defendant Gembecki then slammed Mr. Jenkins into a parked car.

96.     Defendant Gembecki then conducted a pat-down search of Mr. Jenkins.

97.     Mr. Jenkins then heard the Jane Doe NYPD officer, who had stepped on his fingers, yell, "Oh, shit, there's a gun on the floor."

98.     Mr. Jenkins never saw the gun.

99.     Mr. Jenkins was not in possession of a gun or any controlled substances.

100.    Mr. Jenkins did not resist arrest.

101.    John Doe and Jane Doe NYPD officers participated in the arrest of Mr. Jenkins.

102.    Mr. Jenkins was taken to the NPYD 25th Precinct.

103.    Mr. Jenkins's pockets were searched and held $225, a cell phone, a wallet, and keys.

104.    Mr. Jenkins was placed in a holding cell.

105.    Mr. Jenkins remained at the Precinct until approximately 9:00 p.m. that day.

106.    Mr. Jenkins was then taken to Central Booking.

107.    On the morning of January 30, 2020, Mr. Jenkins was arraigned.

108.    Mr. Jenkins was falsely charged with criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, resisting arrest, and criminal possession of a controlled substance of the seventh degree.

109.     Defendant Gembecki prepared the false NYPD arrest report for the false arrest of Mr. Jenkins.

110.     Defendant Monge prepared and signed the false charging document in Mr. Jenkins's criminal case.

111.     Mr. Jenkins pleaded not guilty on all counts.

112.     Mr. Jenkins remained in the cells of Central Booking until February 4, 2020.

113.     Mr. Jenkins was brought in front of a Grand Jury on February 4, 2020.

114.     Mr. Jenkins testified before the Grand Jury.

115.     The Grand Jury decided not to indict Mr. Jenkins on any charges.

116.     The same day, February 4, 2020, a judge dismissed the criminal case against Mr. Jenkins.

117.     Mr. Jenkins returned to the 25th Precinct to retrieve his belongings.

118.     Mr. Jenkins's wallet and keys were returned to him.

119.     Mr. Jenkins asked that his $225 and cellphone be returned as well.

120.     Defendant Monge said that the money and cellphone were going to be held because they related to another arrest.

121.     Mr. Jenkins's $225 and cellphone have not been returned to him.

122.     Mr. Jenkins filed a complaint with the Civilian Complaint Review Board.

123.     The Civilian Complaint Review Board has not completed its investigation.

124.     The conduct of Defendants, as set forth in the preceding paragraphs, resulted in damages and injuries to Mr. Jenkins, including but not limited to loss of liberty, physical injuries, emotional pain and suffering, lost property, lost wages, and loss of future earning capacity.

125.    The conduct of Defendants, as set forth in the preceding paragraphs, was the proximate cause of Mr. Jenkins's damages and injuries.

126.    The conduct of Defendants, as set forth in the preceding paragraphs, was objectively unreasonable, intentional, purposeful and/or knowing, and was undertaken with malice and/or reckless disregard of Mr. Jenkins's constitutional rights.

## CAUSES OF ACTION

### First Claim for Relief
### Title 42, United States Code, Section 1983
### First Amendment Retaliation against the Individual Defendants

127.    Mr. Jenkins re-alleges and incorporates by reference each of the preceding paragraphs.

128.    Mr. Jenkins had the rights to speak freely and protest police actions which were protected by the First Amendment.

129.    The individual Defendants' false arrest, unlawful detention, unreasonable search, false imprisonment, and/or malicious prosecution of Mr. Jenkins were motivated and/or substantially caused by his exercise of the First Amendment rights to speak freely and protest police actions.

130.    The individual Defendants' false arrest, unlawful detention, unreasonable search, false imprisonment, and/or malicious prosecution of Mr. Jenkins chilled the exercise of his First Amendment rights and/or proximately caused damages and injuries to Mr. Jenkins.

### Second Claim for Relief
### Title 42, United States Code, Section 1983
### False Arrest/False Imprisonment against the Individual Defendants

131.    Mr. Jenkins re-alleges and incorporates by reference each of the preceding paragraphs.

132.    The individual Defendants arrested and imprisoned Mr. Jenkins on January 29, 2020.

133.    The individual Defendants did not have probable cause to arrest Mr. Jenkins.

134.    The individual Defendants did not reasonable suspicion to detain Mr. Jenkins.

135.    The individual Defendants did not probable cause or reasonable suspicion to imprison Mr. Jenkins.

136.    Mr. Jenkins had a Fourth Amendment right to be free from unreasonable seizures.

137.    The individual Defendants deprived Mr. Jenkins of his Fourth Amendment right to be free from unreasonable seizures by the false arrest and false imprisonment of Mr. Jenkins.

138.    The individual Defendants acted under of color of law.

139.    The false arrest and false imprisonment of Mr. Jenkins by the individual Defendants proximately caused damages and injuries to Mr. Jenkins.

140.    The false arrest and false imprisonment of Mr. Jenkins were undertaken pursuant to the policies and customs of Defendant City and its policymakers, as set forth above.

**Third Claim for Relief**
**Title 42, United States Code, Section 1983**
**Unreasonable Search against Defendant Gembecki**

141.    Mr. Jenkins re-alleges and incorporates by reference each of the preceding paragraphs.

142.    Defendant Gembecki searched Mr. Jenkins.

143.    Defendant Gembecki did not have reasonable suspicion or probable cause to search Mr. Jenkins.

144.    Mr. Jenkins had a Fourth Amendment right to be free from unreasonable searches.

15

145.    Defendant Gembecki deprived Mr. Jenkins of his Fourth Amendment right to be free from unreasonable searches.

146.    Defendant Gembecki acted under color of law.

147.    The unreasonable search of Mr. Jenkins by Defendant Gembecki proximately caused damages and injuries to Mr. Jenkins.

148.    The unreasonable search of Mr. Jenkins was undertaken pursuant to the policies and customs of Defendant City and its policymakers, as set forth above.

**Fourth Claim for Relief**
**Title 42, United States Code, Section 1983**
**Excessive Force against the individual Defendants**

149.    Mr. Jenkins re-alleges and incorporates by reference the allegations of the preceding paragraphs.

150.    Mr. Jenkins had a Fourth Amendment right to be free from excessive force.

151.    The individual Defendants used excessive force against Mr. Jenkins.

152.    The individual Defendants acted under color of state law.

153.    The individual Defendants deprived Mr. Jenkins of his Fourth Amendment right to be free from excessive force.

154.    The individual Defendants use of excessive force proximately caused injuries and damages to Mr. Jenkins.

155.    The use of excessive force against Mr. Jenkins was undertaken pursuant to the policies and customs of Defendant City and its policymakers, as set forth above.

**Fifth Claim for Relief**
**Title 42, United States Code, Section 1983**
**Malicious Prosecution against Defendant Gembecki and Defendant Monge**

156.    Mr. Jenkins re-alleges and incorporates by reference the allegations of the preceding paragraphs.

16

157.   Defendants Gembecki and Defendant Monge commenced and/or continued a criminal proceeding against Mr. Jenkins.

158.   The criminal proceeding was terminated in Mr. Jenkins's favor.

159.   There was no probable cause for the criminal proceeding against Mr. Jenkins.

160.   The criminal proceeding against Mr. Jenkins was instituted with malice.

161.   Defendant Gembecki and Defendant Monge's malicious prosecution proximately caused injuries and damages to Mr. Jenkins.

162.   The malicious prosecution of Mr. Jenkins was undertaken pursuant to the policies and customs of Defendant City and its policymakers, as set forth above.

**Sixth Claim for Relief**
**Title 42, United States Code, Section 1983**
**Failure to Train, Supervise, and Discipline against Defendant City**

163.   Mr. Jenkins re-alleges and incorporates by reference the allegations of the preceding paragraphs.

164.   Defendant City failed to provide adequate training to NYPD officers.

165.   Defendant City failed to provide adequate supervision to NYPD officers.

166.   Defendant City failed to provide adequate discipline its police officers.

167.   Defendant City's failure to adequately train, supervise, and discipline NYPD officers constituted deliberate indifference to the fact that inaction would obviously result in the violation of constitutional rights.

168.   Defendant City's failure to adequately train, supervise, and discipline NYPD officers proximately caused the violations of Mr. Jenkins's constitutional rights.

169.   Defendant City's failure to adequately train, supervise, and discipline NYPD officers proximately caused injuries and damages to Mr. Jenkins.

17

**Seventh Claim for Relief**
**Title 42, United States Code, Section 1983**
**Custom of False Arrest, Unreasonable Search, Excessive Force, and Malicious Prosecution**
**against Defendant City**

170.    Mr. Jenkins re-alleges and incorporates by reference the allegations of the preceding paragraphs.

171.    The custom of NYPD officers making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecutions is so persistent, widespread, and well-settled that it constitutes the official policy of Defendant City.

172.    The custom of NYPD officers making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecution is so persistent, widespread and well-settled that it has the force of law, even if it has not been formally approved by Defendant City.

173.    The custom of NYPD officers making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecutions is so persistent, widespread and well-settled that the policymakers of Defendant City either knew of it or should have known of it.

174.    The policymakers of Defendant City made/make a conscious choice from various alternatives to follow its official policy and custom of NYPD officers making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecutions.

175.    The policymakers of Defendant City act/acted with deliberate indifference to the consequences of its official policy and custom of NYPD officers making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecutions.

18

176.     The custom of NYPD officers making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecutions was the cause and moving force behind the violations of Mr. Jenkins's constitutional rights.

177.     The custom of NYPD officers making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecutions proximately caused the violations of Mr. Jenkins's constitutional rights.

178.     The custom of NYPD officers making false arrests, conducting unreasonable searches, using excessive force, and participating in malicious prosecutions proximately caused injuries and damages to Mr. Jenkins.

**Eighth Claim for Relief**
**New York State Law**
**Free Speech Retaliation against the Individual Defendants**

179.     Mr. Jenkins re-alleges and incorporates by reference the allegation of the preceding paragraphs.

180.     Mr. Jenkins had the rights to speak freely and protest police actions which were protected by Article I, Section 8 of the New York Constitution.

181.     The individual Defendants' false arrest, unlawful detention, unreasonable search, false imprisonment, and/or malicious prosecution of Mr. Jenkins were motivated and/or substantially caused by his exercise of the Article I Section 8 rights to speak freely and protest police actions.

182.     The individual Defendants' false arrest, unlawful detention, unreasonable search, false imprisonment, and/or malicious prosecution of Mr. Jenkins chilled the exercise of his First Amendment rights and/or proximately caused damages and injuries to Mr. Jenkins.

**Ninth Claim for Relief**
**New York State Law**
**False Arrest/False Imprisonment against the individual Defendants**

183.    Mr. Jenkins re-alleges and incorporates by reference the allegations of the preceding paragraphs.

184.    The individual Defendants intended to confine Mr. Jenkins.

185.    Mr. Jenkins was conscious of the confinement.

186.    Mr. Jenkins did not consent to the confinement.

187.    The confinement of Mr. Jenkins was not otherwise privileged.

188.    There was no warrant for the arrest and/or imprisonment of Mr. Jenkins.

189.    There was no probable cause for the arrest and/or imprisonment of Mr. Jenkins.

190.    The individual Defendants acted under color of state law.

191.    While acting under color of state law, the individual Defendants deprived Mr. Jenkins his New York Constitution Article I, Section 12 right to be free from unreasonable seizures.

192.    The individual Defendants false arrest and false imprisonment proximately caused injuries and damages to Mr. Jenkins.

193.    Defendant City's unconstitutional policies and customs proximately caused the individual Defendants' false arrest and false imprisonment of Mr. Jenkins.

**Tenth Claim for Relief**
**New York State Law**
**Unreasonable Search against the individual Defendants**

194.    Mr. Jenkins re-alleges and incorporates by reference each of the preceding paragraphs.

195.    Defendant Gembecki searched Mr. Jenkins.

20

196.     Defendant Gembecki did not have reasonable suspicion or probable cause to search Mr. Jenkins.

197.     Defendant Gembecki acted under color of state law.

198.     While acting under color of state law, Defendant Gembecki deprived Mr. Jenkins his New York Constitution Article I, Section 12 right to be free from unreasonable searches.

199.     The unreasonable search of Mr. Jenkins by Defendant Gembecki proximately caused damages and injuries to Mr. Jenkins.

200.     The unreasonable search of Mr. Jenkins was undertaken pursuant to the policies and customs of Defendant City and its policymakers, as set forth above.

**Eleventh Claim for Relief**
**New York State Law**
**Assault and Battery against the Individual Defendants**

201.     Mr. Jenkins re-alleges and incorporates by reference each of the preceding paragraphs.

202.     The individual Defendants engaged in intentional physical conduct which placed Mr. Jenkins in imminent apprehension of physical contact.

203.     The individual Defendants intentionally touched Mr. Jenkins without his consent.

204.     The assault and battery of Mr. Jenkins by the individual Defendants proximately caused damages and injuries to Mr. Jenkins.

205.     The assault and battery of Mr. Jenkins was undertaken pursuant to the policies and customs of Defendant City and its policymakers, as set forth above.

**Twelfth Claim for Relief**
**New York State Law**
**Malicious Prosecution**

206.    Mr. Jenkins re-alleges and incorporates by reference each of the preceding paragraphs.

207.    Defendants Gembecki and Defendant Monge commenced and/or continued a criminal proceeding against Mr. Jenkins.

208.    The criminal proceeding was terminated in Mr. Jenkins's favor.

209.    There was no probable cause for the criminal proceeding against Mr. Jenkins.

210.    The criminal proceeding against Mr. Jenkins was instituted with malice.

211.    Defendant Gembecki and Defendant Monge's malicious prosecution proximately caused injuries and damages to Mr. Jenkins.

212.    The malicious prosecution of Mr. Jenkins was undertaken pursuant to the policies and customs of Defendant City and its policymakers, as set forth above.

**Thirteenth Claim for Relief**
**New York State Law**
***Respondeat Superior* against Defendant City**

213.    Mr. Jenkins re-alleges and incorporates by reference the allegations of the preceding paragraphs.

214.    The individual Defendants were/are employees/servants of Defendant City.

215.    The individual Defendants deprived Mr. Jenkins of his rights under the New York Constitution and committed other New York state law torts against Mr. Jenkins.

216.    The individual Defendants acted within their scope of their employment and their master-servant relationship with Defendant City when they deprived Mr. Jenkins of his rights under the New York Constitution and committed other New York state law torts against Mr. Jenkins.

217.    The individual Defendants' deprivation of Mr. Jenkins's rights under the New York Constitution and commission of other New York state law torts against Mr. Jenkins proximately caused injuries and damages to Mr. Jenkins.

218.    Defendant City is liable for the injuries and damages caused by the individual Defendants' deprivation of Mr. Jenkins's rights under the New York Constitution and commission of other New York state law torts against Mr. Jenkins.

**Fourteenth Claim for Relief**
**New York State Law**
**Negligent Training and Supervision against Defendant City**

219.    Mr. Jenkins re-alleges and incorporates by reference the allegations of the preceding paragraphs.

220.    Defendant City had a duty to train and supervise NYPD officers to prevent constitutional violations.

221.    Defendant City breached its duty to train and supervise NYPD officers to prevent constitutional violations.

222.    Defendant City's breach of its duty to train and supervise NYPD officers to prevent constitutional violations proximately caused damages and injuries to Mr. Jenkins.

223.    The individual Defendants and Defendant City were/are in an employee-employer relationship.

224.    Defendant City knew or should have known of the individual Defendants' propensity for committing constitutional rights deprivations prior to the constitutional rights deprivations suffered by Mr. Jenkins.

225.    The individual Defendants' deprivations of Mr. Jenkins's constitutional rights were committed with Defendant City's chattels.

## DEMAND FOR JUDGMENT

226.   Wherefore, Mr. Jenkins demands judgment against Defendants as follows:

   a.   In favor of Mr. Jenkins and against Defendants, as set forth in the preceding

        paragraphs, jointly and severally, for compensatory and special damages;

   b.   In favor of Mr. Jenkins and against Defendants, as set forth in the preceding

        paragraphs, for punitive damages;

   c.   For injunctive and other equitable relief reforming the policies and customs

        of Defendant City, to prevent like actions and harms in the future; and

   d.   For all costs, disbursements, interest, and reasonable attorneys' fees, and for

        such other relief as the Court deems just and equitable.

**MR. JENKINS HEREBY DEMANDS A JURY TRIAL OF THIS ACTION ON ALL**

**ISSUES SO TRIABLE.**

Dated: April 27, 2021
       New York, NY


                                   By:  *s/Jarrett Adams*

                                   Jarrett Adams, Esq.
                                   *Attorney for Plaintiff Norman Jenkins*
                                   The Law Offices of Jarrett Adams, PLLC
                                   40 Fulton Street, Floor 23
                                   New York, NY 10038
                                   Telephone: (646) 880-9707
                                   jadams@jarrettadamslaw.com