UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NORMAN JENKINS,

Plaintiff,

- against -

THE CITY OF NEW YORK, ET AL.,

Defendants.

21-cv-3722 (JGK)

Memorandum Opinion and Order

**John G. Koeltl, District Judge:**

The plaintiff, Norman Jenkins, sued the City of New York (the "City"), New York City Police Department ("NYPD") Officer Brandon Gembecki, NYPD Officer Jorge Monge,[1] and unidentified NYPD officers (together with Officers Gembecki and Monge, the "individual defendants") under 42 U.S.C. § 1983 and New York State law. Among the claims, the plaintiff alleges that he was subjected to a false arrest and malicious prosecution and that the individual defendants used excessive force against him.

The defendants move for partial summary judgment and to dismiss the unidentified NYPD officers from this action. The plaintiff cross-moves for summary judgment. For the following reasons, the defendants' motion is **granted in part** and **denied in part**, and the plaintiff's cross-motion is **denied**.

[1] Defendants Gembecki and Monge are now NYPD detectives. Because they were officers at the time of the disputed events, the Court will refer to them as officers for the purpose of deciding the motions at issue.

## I.

The following facts are based on the parties' supporting papers, including the defendants' Local Rule 56.1 statement, the defendants' declarations, and a transcript of the plaintiff's deposition.

Many of the facts are disputed, but the following few facts are not disputed. On January 29, 2020, the plaintiff walked to a meeting at a government office in Manhattan and ran into an acquaintance ("W.R.") along the way. See O'Connor Decl., Ex. B ("Pl. Dep.") at 30. Officer Monge and Officer Gembecki, dressed in plainclothes, were patrolling nearby in an unmarked rental car when they saw the plaintiff and W.R. interact. See Defs' 56.1 Statement ¶ 6, ECF No. 105. The parties offer different accounts about that interaction and what happened next.

### A.

The defendants' version of the events leading up to the plaintiff's arrest is as follows. Officer Gembecki and Officer Monge saw the plaintiff take a "small object" from W.R. and then "raise" the "object to his nose and sniff" it.[2] O'Connor Decl., Ex. D ("Gembecki Decl.") ¶ 6; O'Connor Decl., Ex. C ("Monge Decl.") ¶ 5. Officer Monge was more specific in the criminal complaint: he "observed [the plaintiff] snort a white powdery substance from a plastic bag." O'Connor Decl., Ex. M ("Crim. Compl.") at 2. In any event, from the officers' view, the interaction looked like a drug transaction. See Gembecki Decl. ¶ 8.

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

The officers got out of the car after the plaintiff and W.R. separated. See Gembecki Decl. ¶ 10. Officer Gembecki approached the plaintiff, and Officer Monge approached W.R. See id. ¶¶ 9–10; Monge Decl. ¶¶ 6–7. Officer Gembecki then noticed a "white powder on [the plaintiff's] nose," which he "believed to be cocaine." Gembecki Decl. ¶ 11. Officer Monge attests that he saw the same thing shortly after the plaintiff was handcuffed "and brought up from the ground." Monge Decl. ¶ 19. A white substance is visible on the bridge of the plaintiff's nose in a photograph taken by Officer Gembecki at the scene of the arrest, see O'Connor Decl. ¶ 9 & Ex. G ("Pl. Photo"); Gembecki Decl. ¶¶ 19–20, which Officer Gembecki suggests matches what he saw, see Gembecki Decl. ¶ 19.

After seeing this white residue, Officer Gembecki told the plaintiff that he was a police officer and "ordered [the plaintiff] to stop moving." Gembecki Decl. ¶ 12. The plaintiff ignored that order, id. ¶ 13, "grabbed [Officer] Gembecki's sleeves," Defs' 56.1 Statement ¶ 14, ECF No. 105, and "a struggle ensued," Gembecki Decl. ¶ 13, causing both men to fall to the ground, id. ¶ 14. Officer Monge and a third off-duty officer helped Officer Gembecki handcuff and bring the plaintiff to his feet. See Defs' 56.1 Statement ¶¶ 18–19, ECF No. 105.

**B.**

The plaintiff's version of the events is different. The plaintiff and W.R. simply "slap[ped] five," spoke for some seconds, and then parted ways.

O'Connor Decl., Ex. B ("Pl. Dep.") at 30. The plaintiff never exchanged anything with W.R. and never used cocaine. See, e.g., id. at 209. Rather, the "stuff that was on [the plaintiff's] nose" in the photograph was "acne" "oil" produced by "the police wrestling" him and "squeezing" his "face." Id. at 118 (first, second, third, and fourth quote), 37 (second and fifth quote), 126 (second, fifth, and sixth quote); contra id. at 195 (later testifying that he had "no acne on [his] face").

The plaintiff does not deny that he grabbed Officer Gembecki's sleeves and does not deny that the two men struggled to the ground. See, e.g., Pl. Dep. at 24. Rather, the plaintiff did so because "he thought he was being assaulted." Id. at 55. The plaintiff alleges that he did not recognize Officer Gembecki as a police officer. See id. at 54. In any event, Officer Gembecki, who was in plainclothes, never told the plaintiff that he was an officer and never gave the plaintiff an order before their physical encounter. See id. at 52–53. The plaintiff alleges that Officer Gembecki "bum rush[ed]" the plaintiff from behind by dipping a shoulder into "the lower part of [the plaintiff's] body," and the plaintiff grabbed Officer Gembecki's sleeves "reflex[ively]" to avoid hitting his head against a nearby wall. Id. at 52 (first and second quote), 73 (third quote).

As the plaintiff held Officer Gembecki's sleeves, the plaintiff claims that Officer Gembecki kneed the plaintiff repeatedly in the "left upper thigh" and "right knee" for some seconds. Pl. Dep. at 73–74. The plaintiff alleges that Officer Gembecki then "intentionally head butt[ed]" him, and the plaintiff "reflex[ively] . . . head butted [Officer Gembecki]" back—at which point the

plaintiff fell to the ground, "stomach down" and "unconscious." Id. On the ground, and after regaining consciousness, the plaintiff alleges that Officer Gembecki punched him in the back of the head "three or four times" and in the back of the shoulders "[a]bout the same amount" for "about three minutes." Pl. Dep. 76–77. When the plaintiff tried to "push up" from the ground, a third off-duty officer "stomped" on the plaintiff's hand so that he "couldn't pull it back," which ripped off "a lot" of one of the plaintiff's nails. Id. at 60 (first quote), 62 (second, third, and fourth quote). At this point, Officer Monge "handcuffed [the plaintiff] roughly," by "jerking" the plaintiff's "left hand" backward "as if to break [his] wrist and shoulder," and Officer Monge and Officer Gembecki then "pick[ed] . . . up" the plaintiff together. Id. at 62. In total, the plaintiff alleges he suffered injuries to his "finger, . . . wrist, . . . shoulder, and . . . elbow," as well as "a slight concussion." Id. at 155.

## C.

The parties also offer different accounts about who possessed what. In the criminal complaint, Officer Monge attested that when he handcuffed the plaintiff, he "observed a .9MM firearm fall from the back of [the plaintiff's] waistband onto the ground." Crim. Compl. at 3. But in their declarations to this Court, neither Officer Monge nor Officer Gembecki attest to seeing the firearm fall to the ground. See Gembecki Decl.; Monge Decl.; see also Defs' 56.1 Statement, ECF No. 105. Rather, they attest that after handcuffing the plaintiff together, Officer Gembecki brought the plaintiff to his feet and Officer

Monge "observed a semi automatic pistol near where [the plaintiff] [had been] laying." Monge Decl. ¶ 18; see also id. ¶ 16; Gembecki Decl. ¶¶ 16–17; Defs' 56.1 Statement ¶ 19, ECF No. 105.

According to the plaintiff, Officer Monge and Officer Gembecki could not have seen the firearm fall from his waistband, because it never happened and the firearm was not the plaintiff's. See Pl. Dep. at 44, 114, 135. Although the plaintiff never saw the firearm himself, W.R. told the plaintiff at the precinct that W.R. saw that firearm fall from Officer Gembecki's pocket. See id. at 34–35. And the plaintiff alleged that after a third-party officer pointed out the firearm on the ground, Officer Gembecki grabbed the firearm and kept it in his back pocket, which he knew from seeing Officer Gembecki reach down and hearing Officer Monge tell Officer Gembecki to take the firearm out of his back pocket. Id. at 64–65. A laboratory report concluded that the swabbed DNA samples collected from the firearm could not "be used or interpreted" against the plaintiff's DNA because the collected firearm samples were "best described as mixtures of four or more individuals." O'Connor Decl., Ex. K ("Lab Report") at 69–71. The firearm, magazine, and cartridges were also "processed for latent prints, with negative results." Lab Report at 8.

At the scene, W.R. was also arrested after Officer Monge saw him "throw away a clear Ziploc bag" with cocaine residue. Monge Decl. ¶¶ 9–11; Defs' 56.1 Statement ¶ 20, ECF No. 105; O'Connor Decl., Ex. F (W.R.'s property voucher) at 1.

The plaintiff was found with a tube of marijuana. O'Connor Decl., Ex. H (the plaintiff's property voucher). The record suggests it was found at the precinct after his arrest, and that the plaintiff tested positive for marijuana sometime after that. Defs' 56.1 Statement ¶¶ 22–23 (noting the discovery of the marijuana after noting Jenkins was taken to the precinct). In any event, all parties appear to agree (or at least, do not dispute) that no one found a bag of cocaine on the plaintiff and that the plaintiff tested negative for cocaine after his arrest. See, e.g., Pl. Dep. at 79, 119. The plaintiff was charged with criminal possession of cocaine, but not marijuana, based on Officer Monge's representation that he saw the plaintiff "snort a white powdery substance from" the "plastic bag" that W.R. threw to the ground. Crim. Compl. at 2.

**D.**

On January 29, 2020, the plaintiff was charged with: (1) criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03(3); (2) criminal possession of a weapon in the third degree, in violation of N.Y. Penal Law § 265.02(1); (3) resisting arrest, in violation of N.Y. Penal Law § 205.30; and (4) criminal possession of a controlled substance in the seventh degree, in violation of N.Y. Penal Law § 220.03. See Crim. Compl. at 2.[3] On February 4, 2020, a grand jury declined to return an indictment, the

[3] The defendants assert that the plaintiff was also "in violation of Penal Law 221.05 unlawful possession of marijuana in the fourth degree" "at the time of his arrest," a law that has since been repealed. Defs' Mem. at 4, ECF No. 106. N.Y. Penal Law § 221.05 governed unlawful possession of marijuana in the second degree and was punishable only by fine, not as a criminal offense. N.Y. Penal Law § 221.15 governed unlawful possession of marijuana in the

charges against the plaintiff were dismissed, and the plaintiff was released. See Defs' 56.1 Statement ¶ 31, ECF No. 105; O'Connor Decl., Ex. N ("Certificate of Disposition") at 2.

On April 28, 2021, the plaintiff sued the defendants. ECF No. 3. In the Complaint, the plaintiff asserted six claims against the individual defendants: (1) free-speech retaliation against all individual defendants, in violation of the First Amendment to the United States Constitution and Article I, Section 8 of the New York State Constitution; (2) false arrest against all individual defendants, in violation of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the New York State Constitution; (3) malicious prosecution against Officer Gembecki and Officer Monge, in violation of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the New York State Constitution; (4) excessive force against all individual defendants, in violation of the Fourth Amendment to the United States Constitution; (5) assault and battery against all individual defendants, in violation of New York State common law; and (6) unreasonable search against Officer Gembecki, in violation of the Fourth Amendment to the United States Constitution and Article I, Section 12 of the New York State Constitution. All of the federal claims were asserted pursuant to 42 U.S.C. § 1983.

---

fourth degree and was a misdemeanor offense. The difference between the two is a question of volume, which the defendants do not specify. In any event, Jenkins was not charged with criminal possession of marijuana.

The plaintiff asserted four claims against the City: (1) respondeat superior liability for the state law torts of the individual defendants; (2) negligent training and supervision of the individual defendants, in violation of New York common law; and (3) failure to train, supervise, and discipline the individual defendants and (4) a custom or practice permitting the individual defendants to violate the Fourth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983 under Monell v. Department of Social Services, 436 U.S. 658 (1978).

On February 1, 2022, the defendants answered the Complaint. ECF No. 29. After years of protracted discovery and the withdrawal of the plaintiff's attorney, both parties now cross-move for summary judgment on some claims. The defendants also move for dismissal of the unidentified NYPD officers.

**II.**

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d

1219, 1224 (2d Cir. 1994). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," not those of a court deciding a motion for summary judgment. Anderson, 477 U.S. at 255; see Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

If there are cross-motions for summary judgment, the Court must assess each of the motions and, in drawing all reasonable inferences against the party whose motion is under consideration, determine whether either party is entitled to judgment as a matter of law. See Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 468 (2d Cir. 2010).

## III.

The defendants seek summary judgment on the Monell claims against the City, on the free-speech retaliation, false arrest, and malicious prosecution claims against Officer Gembecki and Officer Monge,[4] and on the excessive force claim against Officer Monge. The defendants do not seek summary judgment on the excessive force and assault and battery claims against Officer Gembecki.[5]

---

[4] The defendants also move for summary judgment on an unreasonable search claim against Officer Monge. The Complaint, however, only asserts an unreasonable search claim against Officer Gembecki. The motion is therefore **denied** as moot regarding any unreasonable search claim against Officer Monge.

[5] The defendants have not pursued any arguments for summary judgment on the remaining claims: negligent training and respondeat superior liability against the City; assault and battery against Officer Monge; and unreasonable search against Officer Gembecki. The defendants assert "there is no legal basis that any claim against the City should survive summary judgment." Defs' Mem. at 17, ECF No. 106 (emphasis added). That is—at best—a passing reference to the respondeat superior and negligence claims against the City. In any event, the defendants' memorandum of law in support of their motion for partial summary judgment only discusses the plaintiff's Monell claims against the City. See id. at 17–19. The defendants also do not discuss the assault and battery claim against Officer Monge or the unreasonable search claim against Officer Gembecki. Therefore, any arguments the defendants might assert regarding the plaintiff's negligence and respondeat superior and

## A.

The defendants argue that the free-speech retaliation claim should be dismissed because there is no evidence that Officer Gembecki or Officer Monge knew that the plaintiff was on his way to a government office and there is no evidence that the officers were motivated by any desire to deter the plaintiff's free speech. The defendants also argue that the Monell claims against the City should be dismissed because there is no evidence that there was any custom or practice permitting the officers to violate the Fourth Amendment or any failure to train that led to such an alleged violation.

The defendants' arguments on those claims are unopposed. Where, as here, a pro se litigant is involved, although the same standards for dismissal apply, a court should give the pro se litigant special latitude in responding to a summary judgment motion. See McPherson v. Coombe, 174 F.3d 276, 279 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them to raise the strongest arguments that they suggest"). In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. See McPherson, 174 F.3d at 281. In this case, the defendants provided express

claims against the City based on the state law claims against the individual defendants, the assault and battery claim against Officer Monge, and the unreasonable search claim against Officer Gembecki are considered abandoned for the purposes of summary judgment. See, e.g., Zhang v. Gonzales, 426 F.3d 540, 545 n.7 (2d Cir. 2005) (deeming "abandoned" the petitioner's argument about a claim where the petitioner "devote[d] only a single conclusory sentence" to that argument).

notice to the plaintiff that claims asserted in his Complaint may be dismissed in absence of an adequate response to the defendants' motion for partial summary judgment.

In any event, there is no evidence from which a reasonable jury could find for the plaintiff on either claim.

i.

A violation of the First Amendment to the United States Constitution by state officials is actionable under 42 U.S.C. § 1983. The analysis for a retaliation claim under the First Amendment and under Article I § 8 of the New York State Constitution is the same. See Brinn v. Syosset Pub. Library, 61 F. Supp. 3d 247, 255 n.3 (E.D.N.Y. 2014), aff'd, 624 F. App'x 47 (2d Cir. 2015) (summary order). A plaintiff asserting a violation of these provisions must allege that the plaintiff: (1) has engaged in protected First Amendment activity; (2) suffered an adverse action; and (3) there was a causal connection between the two. See Lee-Walker v. N.Y.C. Dep't of Educ., 220 F. Supp. 3d 484, 490 (S.D.N.Y. 2016), aff'd, 712 F. App'x 43 (2d Cir. 2017) (summary order). In this case, there is no evidence that the defendants took any action against the plaintiff because of any protected activities by the plaintiff.

"Conclusory assertions of retaliatory motive are insufficient" to show a protected activity is causally connected to an adverse action. Smith v. Cnty. of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015). And as the defendants point out, "a First Amendment retaliation claim does not exist where the defendants had no knowledge of the allegedly protected speech." Skates v. Inc. Vill. of Freeport,

265 F. Supp. 3d 222, 236 (E.D.N.Y. 2017). These principles are fatal to the plaintiff's free-speech claims. The plaintiff's Complaint conclusorily asserts that the officers' actions were "motivated and/or substantially caused by his exercise of [his] First Amendment rights to speak freely and protest police actions" without providing any assertions of fact. ECF No. 3 ¶ 129, and the record contains no such evidence to support it. The plaintiff's testimony does not explain how Officer Gembecki and Officer Monge could have known that the plaintiff intended to visit a government office before he was arrested, nor explain how that visit was an exercise of his First Amendment rights to speak freely. The plaintiff's claims for retaliation in violation of his free-speech rights must therefore be dismissed.

**ii.**

To bring a claim against a municipality under Section 1983, the plaintiff must allege that the challenged conduct was "performed pursuant to a municipal policy or custom." Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004); see generally Monell, 436 U.S. at 669. To identify a "policy or custom," the plaintiff must demonstrate that the municipality, through its deliberate conduct, was the "moving force" behind the injuries alleged. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997). In this case, the plaintiff has not pointed to evidence to suggest that Officer Monge and Officer Gembecki conducted false arrest, unreasonable search, malicious prosecution, or used excessive force pursuant to any City policy or practice.

The plaintiff also alleges that the City's training was insufficient to protect the constitutional rights of the plaintiff and others. For that claim to survive, the plaintiff must show that "a municipality's failure to train amounts to deliberate indifference to the rights of those" with whom police officers will interact. City of Canton v. Harris, 489 U.S. 378, 388 (1989). As with the custom-and-practice claim, the plaintiff has failed to cite any evidence to support this claim.

The plaintiff has therefore abandoned his free-speech retaliation and Monell claims. See Bronx Chrysler Plymouth, Inc. v. Chrysler Corp., 212 F. Supp. 2d 233, 249 (S.D.N.Y. 2002) (dismissing claim as abandoned where plaintiff made no argument at all in support of claim in summary judgment opposition papers); Anyan v. New York Life Ins. Co., 192 F. Supp. 2d 228, 237 (S.D.N.Y. 2002) (dismissing claim as abandoned where plaintiff failed to address the claim in summary judgment opposition papers and did not present specific evidence on the elements of the claim). Accordingly, the plaintiff's free-speech retaliation and Monell claims are **dismissed**.

## B.

The defendants argue that summary judgment is warranted on the plaintiff's false arrest claims because the plaintiff's apparent use of and proximity to cocaine and his actual possession of marijuana supplied probable cause for the arrest, or in the alternative, because the officers are entitled to

qualified immunity. These arguments fail because there are disputed issues of fact about the basis for the plaintiff's arrest. See Rule, 85 F.3d at 1011.

**i.**

Section 1983 claims for false arrest are "substantially the same as a claim for false arrest under New York law." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012). In New York, false arrest claims require a showing that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996).

It is undisputed that the plaintiff satisfied the first three elements of his false arrest claims. Therefore, for Officer Gembecki and Officer Monge to obtain summary judgment against the plaintiff on his false arrest claims under Section 1983 and New York law, they must show that as a matter of law they had either: (1) probable cause to arrest the plaintiff so as to negate the false arrest claim; or (2) arguable probable cause to arrest so as to entitle the officers to qualified immunity from liability for false arrest.

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. Probable cause is assessed based on the facts known to the arresting officer at the time of the arrest. See Devenpeck v. Alford, 543 U.S.

146, 152 (2004); United States v. Delssantos, 536 F.3d 155, 159 (2d Cir. 2008). Probable cause to arrest for any offense defeats a false arrest claim, whether or not that offense was one invoked by the arresting officer or one for which the plaintiff was ultimately charged. See Devenpeck, 543 U.S. at 153–54.

There is a genuine dispute of material fact as to whether the officers had probable cause to arrest the plaintiff based on what the officers knew at the time of that arrest. One of the defendants' theories of probable cause relates to the plaintiff's alleged cocaine use, and it rests on three propositions: (1) that the officers saw the plaintiff take a small object from W.R.; (2) that they saw him sniff it; and (3) that Officer Gembecki saw white powder underneath the plaintiff's nose before any physical encounter. The plaintiff, however, testified that he and W.R. only slapped five and spoke briefly, that nothing changed hands, that he never used cocaine, and that the white substance visible in the photograph was acne oil that appeared only after the officers struggled with him on the ground. The Court cannot resolve that factual dispute on this motion.

The defendants also argue that probable cause is supported by the fact that Officer Monge picked up a baggie of cocaine near W.R. But a person's proximity to another person's crime does not alone supply arguable probable cause to arrest them. See, e.g, Perez v. Duran, 962 F. Supp. 2d 533, 544 (S.D.N.Y. 2013). In the absence of any uncontradicted evidence that the plaintiff himself appeared to possess cocaine, the defendants' proximity theory does not establish probable cause for the plaintiff's arrest.

The defendants also argue that the officers had probable cause to arrest the plaintiff because marijuana was recovered from him. That argument is unsupported by the record. The defendants' own Rule 56.1 statement indicates that the marijuana was recovered at the precinct after the plaintiff had already been arrested and transported there, which is corroborated by the plaintiff's testimony and arrest report and not disputed by the defendants. Probable cause is measured by what the arresting officer knew at the moment of the arrest, and therefore evidence discovered afterward cannot supply it retroactively. See Devenpeck, 543 U.S. at 152. Neither Officer Gembecki's declaration nor Officer Monge's declaration nor the arrest report mentions marijuana at all, and the defendants have identified no evidence that either officer was aware of any marijuana at the time of the street encounter. Therefore, probable cause for the arrest could not be supported by the defendant's alleged possession of marijuana.

**ii.**

The defendants argue in the alternative that Officer Gembecki and Officer Monge are entitled to qualified immunity because they had at least arguable probable cause to arrest the plaintiff.

Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Even where a right is clearly established, an officer is still entitled to qualified immunity if the officer's

"actions were not objectively unreasonable at the time they were taken," Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997), or if "officers of reasonable competence could disagree on whether the conduct at issue was legal," Perez, 962 F. Supp. 2d at 544; see Malley v. Briggs, 475 U.S. 335, 341 (1986); Lennon v. Miller, 66 F.3d 416, 420–21 (2d Cir. 1995).

In the arrest context, that principle takes the form of arguable probable cause. See Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010). Qualified immunity protects officers performing arrests from liability for civil damages if the officers had "arguable probable cause" to make the arrest, which means "either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Amore, 624 F.3d at 536. Arguable probable cause is a more forgiving standard than probable cause itself, and an officer may be entitled to qualified immunity even if the officer was mistaken in believing that probable cause existed. See id. at 530, 536. Like probable cause, however, arguable probable cause is measured by the facts known to the arresting officer at the time of the arrest. See id. at 535.

There is no question that the right to be free from arrest without probable cause was clearly established at the time of the plaintiff's arrest, see Lennon, 66 F.3d at 423, and the defendants do not argue otherwise. The defendants assert instead that as a matter of law, a reasonable officer in the position of Officer Gembecki and Officer Monge at the time of the arrest could have concluded that the plaintiff had possession of a controlled substance.

That argument fails at this stage for the same reason that the defendants' earlier probable cause argument fails, namely it assumes the truth of the officers' testimony. A defendant is not entitled to qualified immunity on a motion for summary judgment where the availability of the defense turns on which version of disputed events a factfinder credits. See Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007); see also Tolan v. Cotton, 572 U.S. 650, 656–57 (2014) (a court may not resolve disputed questions of fact in favor of the party seeking qualified immunity).

Taking the plaintiff's account as true, as the Court must at this stage, the officers saw the plaintiff exchange a greeting with an acquaintance on a public street, nothing changed hands, the officers could not have observed the plaintiff sniff an object because it did not happen, and no substance was visible on the plaintiff's nose until after the officers had struggled with him on the ground. On that account, the officers arrested the plaintiff for cocaine possession based on nothing more than a handshake with a person who was found to have discarded a bag containing cocaine residue. The defendants have identified no authority suggesting that circumstances comparable to the plaintiff's account would permit any officer of reasonable competence to believe that probable cause existed on those facts alone. The Court could not resolve the factual dispute between the parties' accounts of what the defendants saw at the time of the arrest.

Accordingly, the defendants' motion for summary judgment on the false arrest claims, including on the grounds of qualified immunity, is **denied**.

C.

The defendants move for summary judgment on the plaintiff's claims for malicious prosecution on similar grounds as false arrest, namely that the officers had actual or arguable probable cause to commence the plaintiff's prosecution on firearm-possession and cocaine-possession charges.[6]

i.

To establish a claim for malicious prosecution under federal and state law, a plaintiff must establish the state law elements in addition to a violation of the plaintiff's rights under the Fourth Amendment. Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010). A claim for malicious prosecution under New York State law requires: "(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for [the] defendant's actions." Id.; see Alcantara v. City of New York, 646 F. Supp. 2d 449, 457 (S.D.N.Y. 2009). A claim for malicious prosecution under Section 1983 requires the additional element of "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. N.Y.C. Transit Auth. (NYCTA), 215 F.3d 208, 215 (2d Cir. 2000); see Alcantara, 646 F. Supp. 2d at 457.

[6] The defendants do not argue that the resisting-arrest charge was supported by actual or arguable probable cause. In any event, that charge requires that the underlying arrest was supported by probable cause, see Curry v. City of Syracuse, 316 F.3d 324, 336 (2d Cir. 2003), which remains in dispute.

Unlike a claim for false arrest, a claim for malicious prosecution must be analyzed with respect to each criminal charge. See Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991); Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir. 1989). Probable cause to prosecute one charge therefore does not defeat a malicious prosecution claim premised on a separate charge for which probable cause was lacking. See Posr, 944 F.2d at 100. In this context, probable cause means knowledge of facts, actual or apparent, that would lead a reasonable person to believe the plaintiff is guilty of the charge. See Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003).

It is undisputed that the plaintiff has satisfied the first two elements of his malicious prosecution claims. The defendants commenced a criminal proceeding against the plaintiff, and the criminal proceeding terminated in the plaintiff's favor when the grand jury declined to return an indictment and the charges were dismissed. See Thompson v. Clark, 596 U.S. 36, 49 (2022) (a favorable termination requires only that the prosecution ended without a conviction).

Moreover, the defendants do not discuss the fifth element necessary for the Section 1983 malicious prosecution claim, a sufficient post-arraignment liberty restraint. And the defendants only raise an argument about the element of actual malice in their reply brief. "Arguments may not be made for the first time in a reply brief." Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993). The Court therefore declines to entertain the defendants' malice arguments here.

Accordingly, much like the false arrest claim, the issues that remain are: (1) whether there is a genuine dispute of material fact that there was probable cause to commence the proceeding on the firearm- and cocaine-possession charges brought against the plaintiff; and (2) whether the officers had at least arguable probable cause to prosecute those charges and are therefore entitled to qualified immunity.

As with the false arrest claims, a defendant is not entitled to qualified immunity on a motion for summary judgment when the availability of the defense turns on which version of the disputed events a factfinder could credit. See Zellner, 494 F.3d at 368; see also Tolan, 572 U.S. at 656–57. But, unlike probable cause to arrest, which is measured by the facts known to the officer at the time of the arrest, arguable probable cause to prosecute must account for "any new information learned subsequent to an arrest." Jean v. Montina, 412 F. App'x 352, 354 (2d Cir. 2011) (summary order) (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 572 (2d Cir. 1996)).

There is no question that the right to be free from prosecution commenced without probable cause was clearly established at the time of the plaintiff's prosecution, see Lennon, 66 F.3d at 423, and the defendants do not argue otherwise. Rather, the defendants argue that as a matter of law, it was objectively reasonable for the officers to believe they had probable cause for the charges, or at least that officers of reasonable competence could disagree on that question.

**ii.**

The plaintiff was charged with criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03(3), and criminal possession of a weapon in the third degree, in violation of N.Y. Penal Law § 265.02(1). Both charges required probable cause to believe that the plaintiff possessed the firearm recovered at the scene and involved identical facts and assertions.

There is a factual dispute as to whether the plaintiff possessed the firearm and whether the defendants actually saw the plaintiff possess the firearm. The plaintiff denied possession of the firearm. The plaintiff testified that the officers noticed the firearm only after a third-party officer pointed it out and that officer Gembecki then placed the firearm in his own back pocket. The plaintiff further testified that W.R. told him at the precinct that W.R. saw the firearm fall from Officer Gembecki's pocket—testimony that, if reduced to admissible form at trial through W.R.'s own account, a jury could credit. A jury could further find that account corroborated based on the discrepancy between Officer Monge's sworn statement in the criminal complaint (which attests that the firearm fell from the plaintiff's waistband) and the officers' declarations to this Court (which attest only that the firearm was found on the ground near the plaintiff).

The defendants argue that a reasonable officer could have inferred that the plaintiff constructively possessed the firearm because it was recovered near the plaintiff. But the defendants' authorities do not go so far. One of the

authorities on which the defendants rely addresses a situation where a person had dominion and control over the discrete area in which contraband was found. See People v. Colon, 113 N.Y.S.3d 389, 392 (Sup. Ct. 2019) (cocaine discovered inside a chip bag in the defendant's car). The defendants' other case concludes that a firearm-possession conviction based on a DNA match was not unreasonable despite the firearm being found in a wooded area. People v. Sloley, 117 N.Y.S.3d 373, 375–76 (Sup. Ct. 2020). Neither case supports the inference that a particular person possessed a firearm because it was found nearby on a public sidewalk in the immediate aftermath of a physical struggle involving that person and others. Mere presence in the vicinity of a firearm recovered in a public place does not establish possession of it. See United States v. Rios, 856 F.2d 493, 496 (2d Cir. 1988); United States v. Facen, 812 F.3d 280, 287 (2d Cir. 2016).

The statutory presumption the defendants invoke does not fill that gap. N.Y. Penal Law § 265.15(4) provides that possession of a weapon is presumptive evidence of an intent to use it unlawfully. But that speaks to intent, not to whether the plaintiff possessed the firearm in the first place—and neither of the firearm charges brought, N.Y. Penal Law § 265.03(3) and N.Y. Penal Law § 265.02(1), contain an intent-to-use element at all.

Nor is this a case, as defendants suggest, in which the plaintiff rests on nothing more than his own conclusory assertion that the firearm must have been planted. Cf. Apostol v. City of New York, No. 11-cv-3851, 2014 WL 1271201, at *6 (E.D.N.Y. Mar. 26, 2014), aff'd, 607 F. App'x 105 (2d Cir. 2015);

Gutierrez v. New York, No. 18-cv-3621, 2021 WL 681238, at *18 (E.D.N.Y. Feb. 22, 2021). Unlike the plaintiffs in Apostol and in Gutierrez, the plaintiff in this case presented evidence to corroborate his theory, including his allegation that W.R. saw Officer Gembecki in possession of the firearm before it fell to the ground.

The DNA test does not resolve the dispute because the swabs recovered from the firearm were inconclusive.[7] The firearm, magazine, and cartridges also turned up negative for latent fingerprints. The defendants observe that the inconclusive results did not affirmatively exclude the plaintiff. But on the defendants' own motion it is not the plaintiff's burden to exonerate himself.

Therefore, construing the evidence in the light most favorable to the plaintiff on the defendants' motion for summary judgment, no officer saw the firearm fall from the plaintiff's waistband and the officers observed nothing more than a firearm lying on a public sidewalk near where the plaintiff and several other people stood, including another suspect. On that assumption, an officer of reasonable competence could not have believed that even arguable probable cause existed to prosecute the plaintiff for possessing the firearm—and the officers therefore also lacked probable cause to do so.

**iii.**

---

[7] It appears those results may have been reported after the charges were dismissed. See id. (results dated February 19, 2020); cf. Certificate of Disposition at 2 (dismissal dated February 4, 2020).

The plaintiff was charged with criminal possession of a controlled substance in the seventh degree, N.Y. Penal Law § 220.03, based on Officer Monge's representation that he saw the plaintiff "snort a white powdery substance from" the "plastic bag" that W.R. threw to the ground. Crim. Compl. at 2.

But, as explained above, the defendants' argument depends on disputed issues of fact that the Court cannot accept on the defendants' motion for summary judgment. The plaintiff denies that the facts are as the defendants claim them to be and the Court cannot reject the plaintiff's testimony on the defendants' motion for summary judgment.

It is also undisputed that no cocaine was ever recovered from the plaintiff and that he tested negative for cocaine after his arrest. That is precisely the kind of "information learned subsequent to an arrest" that can affect whether it remained reasonable to prosecute the plaintiff for cocaine possession, see Jean, F. App'x at 354; Lowth, 82 F.3d at 571, and it contradicts the defendants' argument that no exculpatory evidence emerged after the arrest. Any reasonable jury could view a negative drug test, together with the absence of any recovered cocaine from the plaintiff, as intervening facts that undermine any arguable probable cause to prosecute.

Therefore, construing the evidence in the light most favorable to the plaintiff, it would not have been objectively reasonable for an officer to believe

that probable cause existed to prosecute the plaintiff for cocaine possession, and the officers therefore lacked both probable cause and arguable probable cause to do so.

Accordingly, the defendants' motion for summary judgment on the malicious prosecution claims, including on the ground of qualified immunity, is **denied**.

**D.**

The defendants also move for summary judgment on the excessive force claim against Officer Monge under Section 1983.

Claims that a police officer used excessive force during an arrest are analyzed under the Fourth Amendment and its standard of objective reasonableness. Graham v. Connor, 490 U.S. 386, 399 (1989). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene," and that inquiry is fact-specific and ordinarily reserved for the jury. Id. at 396–97; see Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010). An officer who does not personally use force may nonetheless be liable for failing to intervene when the officer observed the use of excessive force and had a realistic opportunity to prevent it. See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). But an officer who is a direct participant in the use of force is liable on that basis, without regard to any

opportunity to intervene. See Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 123–24 (2d Cir. 2004).

The defendants argue that summary judgment is warranted because there is insufficient evidence that Officer Monge had time to intervene in Officer Gembecki's use of force. But the plaintiff does not only claim that Officer Monge stood by. The plaintiff claims that Officer Monge used excessive force himself when he "handcuffed [the plaintiff] roughly," by "jerking" the plaintiff's "left hand" backward "as if to break [the plaintiff's] wrist and shoulder," resulting in injuries to the plaintiff's wrist, shoulder, and elbow. Pl. Dep. at 62, 155. The defendants' own declarations also indicate that Officer Monge helped Officer Gembecki restrain the plaintiff.

Because the plaintiff's claim is that Officer Monge directly participated in the use of force—and the plaintiff has adduced evidence that Officer Monge did so—the defendants' failure-to-intervene argument does not preclude the claim that the plaintiff asserts in his Complaint. Whether the force that Officer Monge used in handcuffing the plaintiff was objectively reasonable under the circumstances is a disputed question of fact that cannot be resolved on this record.

Accordingly, the defendants' request for summary judgment on the excessive force claim against Officer Monge is **denied**.

**E.**

The defendants also move to dismiss the unidentified NYPD officers from this action. The plaintiff does not respond to that request.

Discovery in this case is complete. The statute of limitations for claims brought under Section 1983 arising in New York is three years, see Owens v. Okure, 488 U.S. 235, 249–51 (1989), and it expired in this case on January 29, 2023. Substituting a named defendant for a John or Jane Doe defendant after the limitations period has run does not relate back under Federal Rule of Civil Procedure 15(c), see Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1075–76 (2d Cir. 1993), and in any event, the plaintiff has never sought substitution. Under these circumstances, the unidentified defendants should therefore be dismissed. See Coward v. Town & Village of Harrison, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009).

Accordingly, the defendants' request to dismiss the unidentified NYPD officers from this action is **granted**.

## IV.

The plaintiff has moved for summary judgment on his false arrest and malicious prosecution claims, on a "failure to intervene" claim proffered against Officer Monge for the first time, and on other claims against people who do not appear in the plaintiff's Complaint: (1) "deliberate indifference to [the plaintiff's] medical needs" against a "Defendant Somersall"; (2) "conspiracy and obstruction of justice" against a "Defendant Emily Lapilla"

and a "Defendant Alexandria Bott"; and an excessive force claim against "Officer Maldonado," the off-duty officer who he testified stomped on his hand.[8]

The plaintiff's motion for summary judgment on his false arrest and malicious prosecution claims fails for the same reason that the defendants' motion fails. On cross-motions for summary judgment, the Court must draw all reasonable inferences against the party whose motion is under consideration. See Law Debenture, 595 F.3d at 468. Drawing all reasonable inferences in the defendants' favor, a reasonable jury could credit the officers' statements that they saw the plaintiff take an object from W.R., raise it to his nose and sniff it, appear with white powder on his nose before the arrest, and that a firearm was recovered from ground where the plaintiff had been lying. On that account, a reasonable jury could find that officers had probable cause to arrest and to prosecute the plaintiff. The factual disputes that defeat the defendants' motion therefore defeat the plaintiff's cross-motion as well.

The plaintiff's remaining claims are not properly before the Court. A plaintiff may not amend the complaint through briefing on a motion for

[8] In his memorandum in support of his motion for summary judgment, the plaintiff makes only a passing reference to his excessive force claims against Officer Monge and Officer Gembecki and makes no reference to his unreasonable search claim against Officer Gembecki. Those claims for summary judgment are not alleged sufficiently, see Zhang, 426 F.3d at 545 n.7, and in any event depend on disputed issues of fact and are therefore not a basis for summary judgment in the plaintiff's favor.

summary judgment. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998); Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010). The plaintiff was given until September 8, 2025, to file an amended complaint. See ECF No. 96. That date has passed, and the plaintiff did not file any amended pleadings. Therefore, the Court declines to consider the failure-to-intervene claim proffered against Officer Monge for the first time, or the claims proffered against Somersall, Lapilla, Bott, and Maldonado.

Accordingly, the plaintiff's cross-motion for summary judgment is **denied**.

## CONCLUSION

The Court has considered all the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit.

For the foregoing reasons, the defendants' motion for partial summary judgment is **granted in part** and **denied in part**, and the plaintiff's cross-motion for summary judgment is **denied**. The plaintiff's free-speech retaliation claims and Monell claims are **dismissed**. The defendants' motion to dismiss the unidentified NYPD officers from this action is **granted**. The defendants' motion is **denied** in all other respects.

The claims remaining in this action are the claims against Officer Gembecki and Officer Monge for false arrest, malicious prosecution, and

excessive force under 42 U.S.C. § 1983, together with the corresponding claims under New York State law, including assault and battery; the unreasonable search claim against Officer Gembecki; and the claims against the City for respondeat superior liability and for negligent training and supervision.

The Clerk is respectfully requested to close **Docket Nos. 103 and 116**.

**SO ORDERED.**

**Dated: New York, New York**
**September 15, 2026**

**John G. Koeltl**
**United States District Judge**